147 So. 399

**CARTWRIGHT v. HUGHES.**

8 Div. 415.

Supreme Court of Alabama.
March 9, 1933.

Rehearing Denied April 20, 1933.

O. Kyle, of Decatur, and R. B. Patton, of Athens, for appellee.

Fred Wall, of Athens, and A. J. Harris, of Decatur, for appellant.

FOSTER, Justice.

■■ This court will take judicial notice of the record on the former appeal of this case, and the result of the same. It is shown that the judgment on demurrer to the complaint is the same judgment on both appeals. and was therefore a .part of the judgment which was reversed on the former appeal. Alabama City G. & A. R. Co. v. Bates, 155 Ala. 347, 46 So. 776; Wade v. Kay, 210 Ala. 122, 97 So. 129. The former appeal is shown in 222 Ala. 4, 130 So. 550.

After a reversal and remandment, there was no further ruling on pleadings. But on this appeal appellant assigns as error the judgment overruling demurrer to the complaint, which judgment was reversed on the former appeal. It is asserted in several of our cases that the reversal of the judgment fixes the same status as though no such judgment was ever rendered. Greely v. Cottingham (Ala. Sup.) 39 So. 567; Alabama City G. & A. R. Co. v. Bates, supra; Marsh v. Elba Bank & Trust Co., 205 Ala. 426, 88 So. 423. In others it is said that an appeal settles all questions which arose prior to the first appeal and which might have been but were not then presented.. Alabama City G. & A. R. Co. v.

Bates, supra; Sellers v. Dickert, 194 Ala. 661, 69 So. 604.

Another statement of it is that on a second appeal the court will only review rulings which occurred after remandment. Ala. Power Co. v. Davidson, 206 Ala. 501, 90 So. 915; McGeever v. Terre Haute Brewing Co., 201 Ala. 290, 78 So. 66; 4 Corpus Juris, 1097, § 3077.

All such statements are apparently consistent. It is not essential to it that the ruling might have been considered if it is embraced in a judgment which is reversed. Some authorities assert that, if appellee wishes a consideration of the question, it should be cross-assigned by him. Chicago, I. & L. R. Co. v. Bloomington, 182 Ind. 236, 105 N. E. 561, and cases cited in 1 A. L. R. 728, 729.

■ But we think it is clear that a judgment on demurrers to pleading is a part of the final judgment rendered in the cause, and is not, as in chancery, a separate interlocutory judgment, and that, when an appeal is taken from that judgment, and it is reversed, it is "reversed throughout and [to be] tried anew." Alabama G. S. R. R. Co. v. McAlpine, 80 Ala. 73. ' While that case is not exact in its application here, the principle is analogous. If there have been rulings on pleadings, those rulings also are vacated, and, in order to review them on appeal, another judgment embracing them is necessary. However, the ground of demurrer insisted upon on this appeal relates only to the legal right to claim a certain item of special damages set forth in the complaint. Demurrer is not the appropriate method of reaching such defect. Cassells' Mill v. Strater, 166 Ala. 274, 51 So. 969; National Surety Co. v. Citizens' L., H. & P. Co., 201 Ala. 456, 78 So. 834; Central of Ga. Rwy. Co. v. Ashley, 159 Ala. 145, 48 So. 981.

The case was tried on counts 1 and 2. The representations alleged in both counts were the same, "that it was a good investment and that said bank was solvent and that its assets were good clean assets." They are also the same representations averred in the complaint treated in Cartwright v. Braly, 218 Ala. 49, 117 So. 477, and on the former appeal in this case. Count 2 alleges the intent to deceive, but count 1 does not.

■■ In the cases just referred to, the court pointed out that taken as a whole, and stated in the conjunctive, they were sufficient to found an action for deceit. That means, as we understand it, for such is the rule, that all those averments must be proven to the reasonable satisfaction of the jury. For it is not sufficient to show the "falsity of one of the several statements contained in the one representation alleged." It is correctly said that "the one alleged representation as an entirety is descriptive of the tort

complained of, and is not sustained by proof of the falsity of only a part of such representation." City Loan & Banking Co. v. Byers, 1 Ala. App. 583, 55 So. 951, 952.

We think the jury could find that it was not a good investment. Upon the question of whether the evidence showed that the bank was then insolvent and that its assets were good clean assets, the evidence showed facts substantially as follows: The examiner of accounts supervised the reorganization, made necessary by his determination that the capital was impaired, not that it was insolvent, but that the capital and surplus were lost. Thereupon the stock was sold by authority of section 55, USCA, tit. 12, and new stock issued to the purchasers. By this method the old stock was disposed of and an equal amount of new stock was issued for $50,000, paid into the treasury, and the bank continued under its existing charter. The federal reserve bank virtually canceled $25,000 of its claim against the bank, and much bad paper was charged off as a loss. The federal authorities approved its status, the officers were changed, but it continued to owe the same debts as before, except the $25,000 to the federal reserve. It was in that condition when plaintiff not only purchased the ten shares for which this suit was brought, but purchased through other sources thirteen shares in addition.

In about three years the bank ceased to function. The depositors were cared for by means of an agreement with another bank which assumed the liability. This was upon the consideration of an assignment to it of certain assets, and of certain notes executed by some of the stockholders equal to the par value of their stockholdings. Plaintiff was one of them and executed her note for $2,300, which she has paid. But other creditors of the bank were not included in this arrangement. How they have fared does not appear.

There is evidence that the final liquidation was due to losses on account of loans which were made before reorganization, and on account of certain other liabilities resulting in suits, and which apparently were not reckoned for some reason as liabilities at the time of reorganization, but with which defendant had nothing to do. While defendant was a director under the old management, he was not an active officer. He was president and his son cashier after reorganization. We think the jury could find that, at the time of reorganization, considering subsequent events, as evidence of the effect of existing conditions, the assets and liabilities of the bank were such as that it was in a sense insolvent, though not so understood by defendant or the federal bank officers, nor any one else, so far as the evidence shows. For it is said that "subsequent events, if they show that the company was worthless, may be considered

in determining the value of the stock immediately after the shares were sold." 4 Sutherland on Damages, § 1172, p. 4409. From all of this the question of the solvency of the bank as reorganized, and the nature of the assets as to being "clean" was one for the jury.

■ So that we are not willing to say that the entire representation consisting of the three several statements cannot be found to have been false when and if made. There was evidence that defendant made them in substance. This leads to the result that the affirmative charge was not due on the first count.

■ The second count has the additional averment that defendant made the representations with the intent to deceive and defraud the plaintiff. It includes the same facts necessary to justify a recovery on count 1, as well as such additional averment. The only effect of the existence of such intent to deceive and defraud is to sustain a right to punitive damages. Southern Bldg. & Loan Ass'n v. Dinsmore (Ala. Sup.) 144 So. 21; [1] Southern Bldg. & Loan Ass'n v. Bryant (Ala. Sup.) 144 So. 367.[2] The court did not instruct the jury on punitive damages and the record shows no effort of plaintiff's counsel to sustain such recovery. Though there may have been no intent to deceive, there was no prejudice to defendant resulting from a refusal of the affirmative charge on that count.

■ But it is claimed that the evidence did not justify a substantial recovery because there was no evidence of the market value of the stock at the time of the sale. It is true that the rule is ordinarily stated to be that the measure of damages is the difference between its value at that time and what it would have been worth had it been as represented. Tillis v. Smith, 188 Ala. 122, 65 So. 1015; Preston Motors Corp. v. Wood, 208 Ala. 172, 94 So. 70.

The question of time is not often involved, but in such a transaction as this in 4 Sutherland on Damages, § 1172, at page 4409, it is said that "the value of the stock sold is not uniformly fixed as of the time of the sale, especially if the purchase was made as an investment. The fraud in such a case has been considered operative until the purchaser learned of it; that is regarded as the time when his cause of action arose." In Southern B. & L. Ass'n v. Bryant, supra, such is said to be the true rule as also asserted in So. B. & L. Ass'n v. Wales, 24 Ala. App. 542, 138 So. 553, and in two Arkansas cases. Danielson v. Skidmore, 125 Ark. 572, 189 S. W. 57; Ft. Smith Lbr. Co. v. Baker, 123 Ark. 275, 185 S. W. 277; 27 Corpus Juris, 91.

■ One aspect of the evidence tends to show that plaintiff discovered the falsity, if

false, when and if made, of the declarations about April, 1926, from an article in the county newspaper. The jury could infer that it was then and thereby generally known that the condition of the bank was such as that its stock had no market value. There was evidence that it was then insolvent, and that this was known publicly. While the representation must have been false when made, under the rule in such cases, the damage is measured by conditions when plaintiff discovered the falsity. So that we cannot say that the jury could not find that there was then an appreciable difference in the market value of the stock and what it would have been worth had the representations been true when made.

There are two provisions of the national banking law by which shareholders may be assessed. One is by section 55, USCA, tit. 12 (R. S. § 5205, as amended), for the purpose of restoring its impaired capital. When so impaired, and when required by the Comptroller, the shareholders must be assessed by the directors in an amount sufficient thus to restore the capital, and, if any are in default, may sell their shares at auction. It was by that process that the bank was reorganized, and plaintiff bought some of the stock, when it was all sold and $50,000 added to restore the capital.

The other is by section 63, USCA, tit. 12. As to it, the rule is that: "It attaches, exists, and is enforceable and dischargeable at the times, in the manner, and for the purpose specified in the act of Congress. It attaches and exists for the purpose of creating a fund for the exclusive purpose of paying the creditors of the bank equally and ratably. Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Scott v. Latimer, 89 F. 843, 33 C. C. A. 1, 14. Indispensable conditions precedent to the enforcement of such liability are: First, the adjudication of the Comptroller of the insolvency of the bank and that it is in liquidation; and, second, the adjudication and order of the assessment or requisition on the shareholders of the bank under section 9689 [12 USCA § 64]. Deweese v. Smith, 106 F. loc. cit. 441, 45 C. C. A. 408, 66 L. R. A. 971; Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; United States v. Knox, 102 U. S. 422, 425, 26 L. Ed. 216; Bank v. Case, 99 U. S. 628, 634, 25 L. Ed. 448; Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168; Bushnell v. Leland, 164 U. S. 684, 685, 17 S. Ct. 209, 41 L. Ed. 598." Page v. Jones (C. C. A.) 7 F.(2d) 541, 544; 12 USCA p. 130, note 41.

No part of this procedure was observed. No liability was ever fastened on the stockholders by an adjudication of insolvency or an assessment by the Comptroller. But, as we have said, the officers and stockholders made an arrangement with another bank whereby in consideration of a transfer to it of some of

[1] 225 Ala. 550.

[2] 225 Ala. 527.

468

its assets and of the notes of certain of its stockholders for an amount equal to their shares of stock, such bank assumed payment to the depositors, but not to other creditors. It was a voluntary act on their part, and there never existed the facts which made it compulsory. It has been held that such voluntary contribution would not be a defense to an assessment if subsequently made by the Comptroller, since they knew that it would not be used "equally and ratably" (section 63, USCA, tit. 12) for the benefit of all creditors. Page v. Jones, supra. Such payment was made expressly for and used only to satisfy depositors, whereas there were other creditors entitled to the benefit of section 63. Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260.

Plaintiff is not in the position of one who recognizes the validity of a claim and pays it without suit. The existence and effectiveness of the claim were dependent upon a judicial determination of the Comptroller. If under any circumstances a voluntary contribution by a national bank stockholder to a fund to pay creditors may equitably relieve him to that extent of such statutory liability, if it is ever fixed by assessment, it seems to be the judgment of the federal courts that it cannot be so held even in equity when such contribution was not used for the equal benefit of all creditors. He cannot by such voluntary payment fasten a liability on another or an item of damage proximately caused by fraud, until there is a sufficient assessment by the Comptroller. Until then it is only inchoate and contingent, and may never be fixed.

Both counts of the complaint allege that plaintiff was legally called on to pay in an additional $1,000 to said bank as it was her legal duty to do as a stockholder. But the evidence does not support that averment. She was not called upon to discharge a liability which was then her legal duty to perform.

The court charged the jury that, if there was no such assessment, the payment of $1,000 could only be considered as an item of damages if it was actually necessary to liquidate the bank's indebtedness. While there was no exception to this charge, defendant requested a special charge which was refused (No. 23), that the damages should not be greater than $1,000 with interest. Since that was the par value of the stock, and the amount she paid for it, it measured the maximum difference between its represented value and its true value. It should have been given, since the evidence, in our opinion, was not sufficient to support punitive damages, and the verdict was in excess of compensatory damages shown by the evidence.

Since the only error related to the amount of damages in excess of $1,000 and interest,

under section 6150, Code, it is our duty to adjudge that the judgment shall be affirmed on the condition that appellant shall within thirty days remit the amount of the excess which we calculate to be $104.14, so that the judgment shall be reduced to $1,724.62, with interest from March 29, 1932. If such remittitur is not thus filed, the judgment shall be reversed, and the cause remanded. Faulkner v. Gilchrist, 225 Ala. 391, 143 So. 803.

Affirmed conditionally.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

