518 So.2d 675 (1986)
Mary A. DAVISON and Paul A. Davison
v.
MOBILE INFIRMARY and Dr. Richard H. Esham.
Dr. Richard H. ESHAM
v.
Mary A. DAVISON and Paul A. Davison.
MOBILE INFIRMARY
v.
Mary A. DAVISON and Paul A. Davison.
84-1183, 84-1231 and 84-1232.
Supreme Court of Alabama.
October 3, 1986.
On Return to Remand July 24 and December 23, 1987.
*676 Joseph M. Matranga, Patrick M. Sigler, and Stephen C. Moore, Mobile, for appellants/cross-appellees.
James J. Duffy, Jr., James J. Duffy III, and Dennis P. McKenna of Inge, Twitty, Duffy & Prince and Brock B. Gordon and Wade B. Perry, Jr., of Johnstone, Adams, Howard, Bailey & Gordon, Mobile, for Mobile Infirmary.
W. Boyd Reeves and A. Danner Frazer, Jr., of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for Dr. Richard H. Esham.
PER CURIAM.
This is the second time this case has been before this Court. On the first appeal, from adverse judgments in favor of each Defendant, this cause was remanded for a new trial. Davison v. Mobile Infirmary, 456 So.2d 14 (Ala.1984).
Following the second trial, the jury returned a verdict in favor of Mary Davison against both Defendants for $5,000,000. The jury returned a verdict in favor of Paul Davison against both Defendants for $3,000,000. The court granted new trials to both Defendants unless Mary Davison filed a remittitur of $4,000,000 within 30 days, and unless Paul Davison filed a remittitur of $2,650,000 within 30 days. Thus, on verdicts for both Plaintiffs totaling $8,000,000, the judge ordered remittiturs totaling $6,650,000.
Upon Plaintiffs' failure to file the remittiturs within 30 days, the court vacated the judgment in favor of each Plaintiff and granted each of Defendants' motion for new trial. From this order, the Davisons appeal.
Defendants cross appeal, challenging the trial court's adverse rulings on their respective alternative post-judgment motions for judgment notwithstanding the verdict or for a new trial on the ground of excessiveness of the jury verdict. Our review of the record of the second trial substantiates, as Defendants acknowledge, that the evidence, in all material aspects, is identical to the evidence on the first trial. We hold, therefore, that the trial court did not err in denying Defendants' motions for directed verdicts at the close of all the evidence or in denying Defendants' post-judgment motions for J.N.O.V.
The single issue raised on the appeal is the propriety of the trial court's orders requiring remittitur as a condition to its denial of Defendant's motion for new trial. Because these orders, forming the basis for this appeal, were entered before our opinion in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), we remand this cause to the trial court for reconsideration of the remittitur issue in compliance with the standards set forth in Hammond. See, also, Harmon v. Motors Insurance Corporation, 493 So.2d 1370 (Ala.1986); Alabama Farm Bureau Mutual Casualty Insurance Company v. Griffin, 493 So.2d 1379 (1986); and Reinhardt Motors, Inc. v. Boston, 516 So.2d 509 (Ala.1986) (each of these cases remanded). The trial court, in its discretion, may order an additional hearing on the remittitur issue, or may comply with these instructions without further hearing. In any event, the trial court shall report its findings and conclusions to this Court within 28 days of the issuance of this opinion.
AFFIRMED AS TO THE CROSS-APPEAL; AS TO THE APPEAL, ORDER GRANTING NEW TRIAL REVERSED; REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
HOUSTON, J., not sitting.
MADDOX, Justice (concurring specially).
I concur in the opinion, but I point out that I was of the opinion that the judgment based upon the jury verdict for Dr. Esham in the first trial of this case was due to be affirmed. See my dissent in Davis v. Mobile Infirmary, 456 So.2d 14 (Ala.1984).

On Return to Remand
PER CURIAM.
A brief review of the history and current posture of these cases may be helpful. On *677 the first appeals from judgments in favor of the defendants, this Court reversed the judgments and remanded the cause for a new trial. Davison v. Mobile Infirmary, 456 So.2d 14 (Ala.1984). On the new trial, the jury returned verdicts in favor of Ms. Davison for $5,000,000 and in favor of Mr. Davison for $3,000,000. Following a hearing on defendants' post-trial j.n.o.v. motions, the trial court denied the motions for j.n.o.v., and denied the alternative new trial motions on the condition that Ms. Davison remit $4,000,000 and that Mr. Davison remit $2,650,000. From the order granting a new trial because of their failure to comply with the order of remittitur, the Davisons appealed and Mobile Infirmary cross-appealed. On the appeal, the order granting a new trial was reversed and the cause was remanded for reconsideration of the excessiveness-of-the-verdict ground of defendants' motions for new trial, pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). On the cross appeal, the judgment was affirmed. (See page 676). Upon remand, the trial court entered the following "Supplemental Order on Remittitur."
"This cause was remanded to this Court for findings and conclusions in compliance with the standards set forth in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). The Court previously held a hearing on Defendants' separate motions for judgment notwithstanding the verdict or, in the alternative, new trial or remittitur, and at that hearing heard oral argument from counsel for all parties, and reviewed legal authorities, and partial transcripts from the closing argument of Plaintiffs' counsel. In rulings on those motions the Court considered the entire trial, including the Court's observations of the plaintiffs at trial, their ages and all evidence as to injuries and damages suffered by plaintiffs. Plaintiffs' pecuniary losses involved had all been incurred in the past, and there were no pecuniary losses of any kind for the future. Mrs. Davison became extremely emotional during her testimony so as to arouse the sympathy, bias, passion and prejudice of the jury, and the jurors in fact exhibited an extremely sympathetic and emotional response during Ms. Davison's testimony. The Court further considered all evidence introduced, the Court's observation of all witnesses, jurors and counsel, the conduct of counsel, the degree of culpability of defendants that arguably could have been found under the evidence in this case, the fact that directed verdict on all claims for wantonness were affirmed in the first trial and thus no punitive damages were allowable in this case, and the impact of the amount of damages on Defendants, which would be devastating. The trial judge also drew upon 25 years' experience as a personal injury plaintiff's lawyer, and five years' experience as a trial judge in the Circuit Court of Mobile County. Based on the foregoing, the Court concluded, and hereby recites, that the verdict in this case was outrageously and grossly excessive, was far beyond the realm of reason and common sense and was the product of bias, passion, prejudice, corruption or other improper motive, and that Defendants were entitled to a new trial, unless Plaintiffs accepted remittitur in the amount of $2,650,000.00 in Mr. Davison's claim, and $4,000,000.00 in Mrs. Davison's claim. Since Plaintiffs did not accept the remittitur this Court granted both Defendants' motions for new trial."
After careful study of this supplemental order and after much deliberation, we are constrained once again to remand this cause for further reconsideration of the issue of damages. We are troubled both by what is stated in the order as well as by what is not stated. In three instances, the order refers to "counsel" ("argument of Plaintiffs' counsel"; "Court's observation of ... counsel," and "conduct of counsel"), each reference obviously meaning "plaintiffs' counsel." By the order's repeated references to "counsel," the trial judge clearly indicates that one of the significant factors that he considered, as bearing on the "excessiveness" issue, was misconduct on the part of plaintiffs' lawyer. Yet, the trial judge found no misconduct *678 amounting to trial error, nor was any claimed error on this ground sustained on appeal. From our study of the supplemental order or from our independent understanding of the record of trial, we are unable to discern any link between the conduct of counsel and the amount of the jury's award of damages.
Next, we are troubled by the trial "Court's observation of ... the degree of culpability of defendants that arguably could have been found under the evidence in this case." As the supplemental order correctly points out, the case was submitted to the jury on the plaintiffs' claims of simple negligence, seeking compensatory damages only. Perhaps a possible explanation for this "observation" is the trial court's earlier conclusion (on the first trial) that one of the defendants was entitled to a directed verdict and the further fact that the jury in the first trial found for the remaining defendant. (Both judgments were reversed on the first appeal.) At any rate, where, as here, the only claim is for compensatory damages, the "degree of culpability of defendants" is not an appropriate consideration in testing the "excessiveness" ground for a new trial.
We hasten to point out that we share the blame for the trial court's consideration of the "culpability of the defendants." Indeed, Hammond included among its suggested factors for consideration "[t]he culpability of the defendants' conduct," as well as "the desirability of discouraging others from similar conduct" and "the impact upon the parties." Upon reflection, we could have made it clearer that these factors are appropriate for consideration where the issue is the propriety of a jury's award of punitive damages, as was the case in Hammond.
To like effect is the trial court's reference to the "court's observation of ... the impact of the amount of damages on Defendants, which would be devastating." Surely, at the post-judgment stage, where punitive damages have been claimed and awarded and where defendants claim excessiveness of the award, both the "degree of culpability of defendants" and "the devastating effect of the verdict on the defendants" are material issues for the trial court's consideration. It is axiomatic, however, that no such rule governs the trial court's consideration of the excessiveness issue when only compensatory damages are awarded.
We come now to the final reason given by the trial court for ordering a remittitur of damages as a condition for its denial of a new trial: "Mrs. Davison became extremely emotional during her testimony so as to arouse the sympathy, bias, passion and prejudice of the jury, and the jurors in fact exhibited an extremely sympathetic and emotional response during Ms. Davison's testimony." As this Court pointed out in Hammond, it is the trial court, and not the appellate court, that is peculiarly qualified to pass judgment on whether the verdict is the result of bias or prejudicethe primary reason for granting a new trial (or denying a new trial on the condition of remittitur) on the ground of excessiveness.
While we defer to the province of the trial court in this matter, we are constrained to make two observations: 1) The record of trial does not reflect anything unusual during Ms. Davison's brief period on the witness stand. It is true that she alleged, and the jury obviously believed, that she was rendered totally blind as a result of the negligence of the defendants; but an injured plaintiff is under no duty to conceal from the jury the nature and extent of her injury, nor is the jury bound to ignore, or to treat with indifference, whatever injury it finds to be the proximate result of defendants' culpable conduct; and 2) the trial court's conclusion "that the verdict ... was outrageously and grossly excessive, was far beyond the realm of reason and common sense and was the product of bias, passion, prejudice, corruption or other improper motive" is a clear indication, when viewed in the light of the record, that the amount of the verdict is the sole basis for the trial court's findings of sympathy, bias, and prejudice, rather than any unwarranted sympathetic appeal to the jury by the blind plaintiff.
*679 This is not to say that we reject, out of hand, the trial court's finding that an $8,000,000 award for husband and wife, even for such a catastrophic and devastating injury, by virtue of the amount alone, is so excessive as to be the product of bias, prejudice, or other improper motive. What we are testing, however, is not the granting of an unconditional new trial, but a denial of a new trial on the condition that plaintiffs remit $6,650,000 in damages.
In other words, the trial court must exercise extreme caution, as mandated by Hammond, not to reduce the jury award simply because a lesser sum is perceived by the trial court as a reasonable and adequate recovery; rather, the trial judge must determine the maximum amount of money the jury could have awarded to these plaintiffs, as reasonable and adequate compensation for their injuries and damages, so that the verdict, as reduced by the order of remittitur, is not the product of bias, passion, or prejudice. Stated in the context of Ms. Davison's claim, are any and all sums awarded by a jury in excess of $1,000,000, for negligently induced blindness, necessarily and as a matter of law, the product of bias, passion, prejudice, or other improper motive?
It is readily apparent from the trial judge's supplemental order that his answer to this question would have been different if he had not considered a substantial number of unwarranted factors as bearing on the "excessiveness" issue. While we are unable to assign a qualitative value to these immaterial considerations, as perceived by the trial court, unquestionably, each of these factors unduly influenced the trial court's ultimate decision to reduce the jury verdict of $8,000,000 to $1,350,000.
Therefore, this cause is remanded with instructions to the trial court to reconsider its earlier order of remittitur in light of this opinion and this Court's opinion in Hammond as herein clarified. We leave to the sound discretion of the trial court whether an additional hearing is necessary or appropriate for its compliance with these instructions. In any event, a copy of the resultant order will be served on each of the parties, and the plaintiffs will be furnished an additional opportunity to accept or reject a conditional denial of a new trial. If the court conditionally denies a new trial and the condition is accepted by the plaintiffs' filing a remittitur in accordance with the trial court's order, no further proceedings will be necessary in this Court but the circuit clerk shall promptly inform this Court of such action; otherwise, the circuit clerk will file a supplemental record with this Court within 14 days following the trial court's entry of its order of new trial. In that event, supplemental briefs (14 days for the complaining parties and 7 days thereafter for the respondents) will be permitted, but not required, for this Court's reconsideration of plaintiffs' appeal.
REMANDED WITH INSTRUCTIONS.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
BEATTY, J., concurs in the result.
TORBERT, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
Remittitur practice in Alabama is troublesome, and the history of this case makes the application of the remittitur doctrine even more difficult, but I would not overturn the judgment of the trial judge, who has re-examined his original judgment and ordered a remittitur in accordance with the mandate of this Court (See page 677). I would affirm his judgment because (1) I believe the trial judge has substantially followed the directions of this Court, and (2) the trial judge is in a much better position to determine whether the jury's verdict was influenced by passion or prejudice, because he observed firsthand the witnesses when they testified, the jury's reaction to their testimony, and the other incidents occurring during the trial, and we have nothing but the cold record of the trial, and, therefore, we cannot possibly capture the flavor of the trial as the trial judge could. Furthermore, it must be remembered that on the first trial of this case, the Court directed a verdict for Mobile Infirmary, and *680 a jury rendered a verdict in favor of Dr. Esham. Davison v. Mobile Infirmary, 456 So.2d 14 (Ala.1984).
In that first appeal, I concurred in the opinion of this Court insofar as it reversed the judgment of the trial court based upon the directed verdict in favor of Mobile Infirmary, but I dissented insofar as the opinion reversed the judgment entered upon a jury verdict rendered in favor of Dr. Esham. I was joined by one other Justice. 456 So.2d, at 26.
The trial judge who presided over the first trial also presided over this trial. He heard the testimony in both trials. He observed the demeanor of the witnesses and the reaction of the jurors, and while this Court has repeatedly held that the courts should exercise caution in disturbing a jury's verdict on the ground of excessiveness, I am of the opinion that the trial judge, in this case, has followed the mandate of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and has sufficiently stated the reasons why he ordered a remittitur in this particular case.
From the time of the filing of the initial complaint, the plaintiff has claimed that several defendants were guilty of contributing to her injuries, which admittedly are quite severe, but the question presented to the trial judge, at the time he ruled on the defendants' motions for new trial, and after remand by this Court, is the degree of culpability of these defendants.[1]
Remittitur can aid courts in eliminating prolonged disputes and the resultant delays in and expenses of obtaining justice. See, Commentary, "Remittitur Practice in Alabama," 34 Ala.L.Rev. 275, (1983) for a thorough review of the Alabama practice. Rule 1, Ala.R.Civ.P., and Rule 1, Ala.R. App.P., both mandate the determination of disputes as justly, speedily, and inexpensively as possible. Remittitur practice in Alabama is confusing. I fear that this opinion will only tend to cloud the principles of law the bench and bar are to apply when claims are made that a verdict is excessive. I believe appellate courts should be careful in overturning decisions of trial judges, who presumably witness events occurring during the trial that could influence the jury's determination of damages; therefore, I respectfully dissent.
HOUSTON, Justice (dissenting).
By Rule 59(f), Ala.R.Civ.P., we authorize a trial court, on motion for new trial, to require a remittitur as a condition to the overruling of the motion for new trial on the ground of excessiveness. This the trial court did.
In Aspinwall v. Gowens 405 So.2d 134 (Ala.1981), we said that this may be done in those cases where the court can clearly see that the verdict has been reached because of bias, passion, prejudice, corruption, or other improper motives.
In Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala.1986), we recognized that the trial judge is better positioned to decide whether the verdict has been reached because of bias, passion, prejudice, corruption, or other improper motive.
This Court ordered the trial court in the case before us to enter an order consistent with the decision in Hammond v. City of Gadsden, supra. In Hammond, we wrote:
"[The trial court] has the advantage of observing all of the parties to the trial plaintiff and defendant and their respective attorneys, as well as the jury and its *681 reactions to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review trial court action in this sensitive area...."
493 So.2d at 1379.
The trial court in its "Supplemental Order on Remand" wrote: "In ruling on those motions the Court considered the entire trial, including the Court's observations of the plaintiffs at trial, their ages and all evidence as to injuries and damages suffered by plaintiffs. Plaintiffs' pecuniary losses involved had all been incurred in the past and there were no pecuniary losses of any kind in the future. Mrs. Davison became extremely emotional during her testimony so as to arouse the sympathy, bias, passion and prejudice of the jury, and the jurors in fact exhibited an extremely sympathic and emotional response during Ms. Davison's testimony." The trial court further recited that it considered all evidence introduced and that its order was made after observing all witnesses, jurors, and counsel. Has not the trial court done exactly what we told it to do, when we directed that it enter an order consistent with Hammond?
The majority finds that "The record of trial does not reflect anything unusual during Ms. Davison's brief period on the witness stand."
In Hammond we held that the main reason for imposing this extra work on trial courts is because "[t]here are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review trial court action in this sensitive area...."
In Hammond, we wrote:
"Our cases reflect a number of factors which are appropriate for the trial court's consideration: The culpability of the defendant's conduct...."
In entering an order consistent with Hammond, the trial court correctly stated: "The court further considered ... the degree of culpability of defendants that arguably could have been found under the evidence in this case, the fact that directed verdict on all claims for wantonness was affirmed in the first trial and thus no punitive damages were allowable in this case."
The majority now complains that the trial court considered the "degree of culpability of defendants," which it correctly observes is not a ground for remittitur when only compensatory damages are permissible. To me this is what the trial court is saying. It considered what we told it to consider when we told it to enter "an order consistent" with Hammond. In Hammond we said to consider the culpability of the defendant's conduct. The trial court in its order said that it considered that, as we instructed, and found it not appropriate since punitive damages were not allowable.
In Hammond we wrote:
"Our cases reflect a number of factors which are appropriate for the trial court's consideration: ... the impact upon the parties, ...."
493 So.2d at 1379.
In entering an order consistent with Hammond, the trial court wrote: "The Court further, considered ... the impact of the amount of damages on Defendants, which would be devastating."
The majority now rejects "as a viable factor for consideration the `court's observation of ... the impact of the amount of damages on Defendants, which would be devastating.'"
Immediately before noting that an $8 million judgment would be devastating, the trial court explained that punitive damages are not recoverable.
Did the trial court abuse its discretion in granting remittitur? The totality of the trial court's order clearly shows that it did not. If there is any confusion in the trial court's order it is caused by our asking for an order consistent with our decision in Hammond v. City of Gadsden. In Hammond, we set out factors that were not appropriate in this case. We in Hammond wrote that these factors "are appropriate for the trial court's consideration." We wrote that "[t]hese are by no means exclusive," but not that these should not be *682 considered in cases involving only compensatory damages. If the trial court had not disposed of these "factors," it would not have complied with our order on remand.
The right to a trial by jury is a fundamental, constitutionally guaranteed right. Art. 1, § 11, Const. of 1901. A jury verdict should not be set aside unless it is flawed. This Court by virtue of § 12-22-71, Code 1975, has the statutory responsibility of reducing the amount of verdicts that are flawed only by being excessive. This statute is constitutional. Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548 (1921). We have delegated part of our responsibility to the trial courts by Rule 59(f), Ala.R. Civ.P. To me, Hammond is a means of helping this Court determine whether a trial court abused its discretion in carrying out that part of our responsibility delegated to trial courts on the thorny problem of excessive verdicts.
We should be specific in our directions to the trial courts in remittitur remands. We should not direct a trial court to enter an order consistent with our decision in Hammond and then criticize that trial court for doing exactly what we directed it to do.
On behalf of trial courts, I ask: What doth the Supreme Court require of thee? And I dissent.
STEAGALL, J., concurs.

On Return to Remand
PER CURIAM.
The trial judge in this case[1] granted the defendants' motion for a new trial unless the plaintiff, Mary A. Davison, filed a remittitur of $4,000,000 and plaintiff, Paul A. Davison filed a remittitur of $2,650,000. The plaintiffs refused to file the remittiturs. Even though we affirm the trial court's granting the defendants a new trial, we do so conditionally. We believe that we should permit the plaintiffs to elect whether to accept judgments for amounts less than the amounts awarded by the jury. Based on this belief, and pursuant to the authority granted to this Court by Ala. Code 1975, § 12-22-71, if the plaintiffs, Mary A. Davison and Paul A. Davison, file remittiturs of $4,000,000 and $2,650,000, respectively, within 28 days after the date this opinion is filed, then this Court will enter judgments for the plaintiffs in such reduced amounts and will direct the trial court to set aside its order granting a new trial; if the plaintiffs refuse to file such remittiturs within 28 days after the date this opinion is filed, the order of the trial court granting a new trial will stand affirmed.
We emphasize that our conditional affirmance is based on the trial court's specific finding that the verdict is the product of jury bias, passion, and prejudice; thus, our holding is not to be understood as expressing an opinion as to the maximum amount these plaintiffs are entitled to recover in the event of a new trial before an unbiased and unprejudiced jury.
AFFIRMED CONDITIONALLY.
TORBERT, C.J., and MADDOX, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON and SHORES, JJ., concur in the result.
NOTES
[1] A reading of the testimony of plaintiffs' own expert witness at the first trial, a portion of which is set out at 456 So.2d at 18-22, shows that there was substantial testimony that it was the failure of the radiologist to notify Dr. Esham of the presence of the bezoar in the plaintiff's stomach that caused the plaintiff's injuries. At the first trial, plaintiffs' expert described the bezoar as "an extremely unusual occurrence and one which ... should have alerted the radiologist to possible seriousnessthe possible emergency nature of this condition." 456 So.2d at 19. (Emphasis added.) In other words, the jury verdict, in the first trial, insofar as Dr. Esham is concerned, could have been based on evidence that when Dr. Esham was notified of the presence of the bezoar and its toxicity, it was already too late for him to do anything about it. Of course, a majority of this Court determined that plaintiff was entitled to a new trial against Dr. Esham, without regard to the result, and I concurred that plaintiff could try her case against Mobile Infirmary.
[1] Originally, we dealt with three appeals in one opinion. The return to remand relates to only one of those three appeals, namely, 84-1183, Davison v. Mobile Infirmary, et al.